OBED HOLMES & others *vs.* OBED BAKER & others.

By the *St.* of 1849, *c.* 206, two school districts since established, containing the same territory which, differently divided, previously constituted two of the school districts in the town, and in which new districts a school district tax has been assessed and collected, cannot within ten years be consolidated into one district.

Upon a bill in equity filed by ten taxpayers of a town, residing in a school district unlawfully created by a vote of the town to unite two previously existing lawful school districts, this court will restrain the assessors of the town from assessing a school district tax in pursuance of a vote passed at a meeting of such unlawful district, a person elected clerk of such unlawful district from doing any act as such clerk, and a person elected treasurer of such unlawful district from paying out money obtained by a sale of the schoolhouses belonging to the two previously established districts; although the bill is not filed till more than thirteen months after the vote of the town to unite the two districts, and, in the mean time, in pursuance of votes at meetings of the

consolidated school districts, a school district tax has been assessed upon and collected of the taxpayers residing in it, against the written protest of some of them, and the schoolhouses of the two districts previously existing have been sold.

BILL IN EQUITY, filed on the 1st of May 1860 by ten taxpayers of Dennis, residing in the pretended school district numbered 13, alleging that in 1828 and 1829 that town was divided by geographical lines into eleven school districts, including the whole territory of the town, the limits of which remained unchanged until 1856, except that at some time before 1849 three of them were subdivided, increasing the whole number to fourteen; that in 1856 and 1857 the town was redistricted by dividing the whole territory by geographical lines into fourteen school districts, of which those numbered 13 and 14 were identical with two previously established, except that a strip of territory on which were eight dwelling-houses was transferred from that numbered 14 to that numbered 13; that in 1858 a school district tax was assessed and collected in the new district numbered 14; that at a town meeting held on the 7th of March 1859 the town voted to unite these two districts into one numbered 13; that in the same year a meeting was held in the new district thus established, at which Freeman G. Hall was chosen clerk, and it was voted to raise $2200 for a schoolhouse for the new district; that this vote was certified to the assessors, and the amount thereof assessed upon the residents of the new district, and collected of the plaintiffs and other inhabitants of the new district, against the written protest of some and by committing others of them to jail; that in November 1859 a second meeting of the new district numbered 13 was held, at which Howes Chapman was chosen treasurer of the district, and it was voted to sell the two schoolhouses belonging to the two former districts numbered 13 and 14, and to raise a further sum of $375, to be assessed on the inhabitants of the new district in October 1860; that pursuant to this vote said treasurer proceeded to sell the old schoolhouses and realized a considerable sum of money from the sale, and the clerk certified to the town assessors the vote to raise $375; that in 1859 the town voted to raise a large sum of money for the support of schools and

directed a division of it among the various school districts, and a portion of this sum was applied by the general school committee to the support of a school in the new district numbered 13, but none was expended in the maintenance of any school in either of the old districts numbered 13 and 14, and a considerable portion of the sum raised was still in the hands of the town treasurer; and that at the annual town meeting in 1860 it was voted to raise another large sum of money for the support of schools, to be divided among the several school districts by the general school committee of the town for the year 1860.

The plaintiffs contended that the establishment of the new school district numbered 13, and the assessment of taxes in pursuance of a vote of such district, were unlawful, and that the old districts numbered 13 and 14 were still legal districts; and prayed that the general school committee might be compelled to apply a portion of the town school fund to the support of schools in them; and also prayed for injunctions against the town treasurer from paying out any money in his possession or which might come into his possession as the general town school fund, to the support of a school in the new district numbered 13; against the general school committee from maintaining any school in that district at the expense of the town; against the assessors from assessing any tax, and particularly a tax of $375, in pursuance of any vote of that district; against Hall from any further act as clerk of that district; and against Chapman from paying out any of the money derived from the sale of the schoolhouses of the two old districts.

Upon the filing of the bill a temporary injunction was granted as prayed for, which was afterwards, on motion of the defendants, modified so far as to permit the school committee of the town to maintain a public school or schools in the schoolhouse of the new school district, and to allow the town treasurer to pay for the same out of any money already in the town treasury, or any money already raised and appropriated by the town for the support of schools.

The defendants filed answers, admitting the facts alleged in

the bill, and alleging that the new district had been legally established; and the case was heard upon the bill and answers, and reserved by *Hoar*, J. for the consideration of the full court.

*B. Sanford*, for the plaintiffs, upon the question of jurisdiction, cited *Mohawk & Hudson Railroad* v. *Archer*, 6 Paige, 83; *Oakley* v. *Trustees of Williamsburgh*, 6 Paige, 262; *Champlin* v. *New York*, 3 Paige, 573; *Cooper* v. *Alden*, Harrington, (Mich.) 72; and upon the merits, *Sts.* 1849, *c.* 206; 1851, *c.* 303; *Blankinship* v. *Hadley*, 11 Gray, 431; *Gustin* v. *Fifth School District in Danvers*, 10 Gray, 85.

*G. Marston*, for the defendants. The *St.* of 1849, *c.* 206, limiting the previous general law, by which towns might reconstruct school districts at their pleasure, should be strictly construed. It forbids only the change of district lines in such a way as to change land from district to district using different schoolhouses. The only substantial relief prayed for is against the tax for $375. The plaintiffs have no equity, because they have delayed so long to seek relief. If the new district is not legally established for the purpose of taxation, it is for all other purposes.

CHAPMAN, J. Under the *St.* of 1849, *c.* 206, the town of Dennis, by a change made in its school districts in the years 1856 and 1857, exhausted its power to make further alterations so as to affect the taxation of lands as therein mentioned, for the space of ten years. The vote of 1859 uniting the districts numbered 13 and 14 into a new district made such a change as the statute forbids; because under it the lands of proprietors in each district became liable to a new and essentially varied taxation for school purposes. The vote was therefore void; and the organization of the new district was void.

A bill in equity is the only process which will give the plaintiffs an adequate remedy. The redress which could be obtained by suits at law would not only involve the parties in much litigation, but would be imperfect. The plaintiffs have been guilty of no delay or negligence which should deprive them of a remedy by injunction against the future illegal proceedings of the defendants.                *Injunction as modified made perpetual*